IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JASON WAYNE SPRINGER,
      Petitioner,

vs.                                 Case No.:  3:12cv284/RV/EMT

SECRETARY, DEPARTMENT OF CORRECTIONS,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus and supporting memorandum, filed pursuant to 28 U.S.C. § 2254 (docs. 1, 10).  Respondent filed an answer and relevant portions of the state court record (doc. 24).  Petitioner filed a reply (doc. 32).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 24).[1]  In February of 2003, Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2003-CF-483, with one count of fleeing or attempting to

_____

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 24).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

elude a law enforcement officer in an agency vehicle with siren and lights activated at high speed Count 1), one count of resisting an officer without violence (Count 2), one count of driving while license cancelled, suspended, or revoked (Count 3), and one count of reckless driving (Count 4) (Ex. A at 1–2). He was also charged in Case No. 2003-CF-586 with one count of burglary of a dwelling while armed (Count 1), one count of dealing in stolen property (Count 2), one count of grand theft of a firearm (Count 3), and one count of grand theft (Count 4) (*id.* at 5–6). Additionally, he was charged in Case No. 2003-CF-585 with one count of burglary of an unoccupied dwelling (Count 1) and one count of petit theft (Count 2) (*id.* at 21).

In March of 2003, Petitioner was charged in Case No. 2003-CF-732 with one count of burglary of an unoccupied dwelling (Count 1) and one count of grand theft (Count 2) (Ex. A at 3).

In April of 2003, Petitioner was charged in five more cases. In Case No. 2003-CF-1498, he was charged with one count of principal to burglary of an unoccupied dwelling (Count 1) and one count of principal to grand theft (Count 2) (Ex. A at 4). In Case No. 2003-CF-1499, he was charged with one count of principal to burglary of an unoccupied dwelling (Count 1) and one count of principal to grand theft (Count 2) (*id.* at 7). In Case No. 2003-CF-1501, he was charged with one count of burglary of an unoccupied dwelling (Count 1) and one count of grand theft (Count 2) (*id.* at 8). In Case No. 2003-CF-1502, he was charged with one count of principal to burglary of an unoccupied dwelling (Count 1) and one count of principal to grand theft (Count 2) (*id.* at 9). In Case No. 2003-CF-1504, he was charged with one count of principal to burglary of an unoccupied dwelling (Count 1) and one count of grand theft (Count 2) (*id.* at 10).

In July of 2003, Petitioner was charged in eight more cases. Case Nos. 2003-CF-2944 through 2003-CF-2949 each charged him with one count of burglary of an unoccupied dwelling (Count 1 in each case), one count of grand theft (Count 2 in each case), and one count of criminal mischief (Count 3 in each case) (Ex. A at 11–17). Case Nos. 2003-CF-2963 and 2003-CF-2964 each charged him with one count of burglary of an unoccupied structure (Count 1 in each case), one count of grand theft (Count 2 in each case), and one count of criminal mischief (Count 3 in each case) (*id.* at 18–20).

On February 25, 2004, Petitioner pled nolo contendere as charged, pursuant to a written plea and sentence recommendation, to all counts in all cases, and he agreed to be sentenced as a habitual felony offender ("HFO") as to Count 1 in each case (fleeing a law enforcement officer and the

burglaries) and Count 2 in Case No. 2003-CF-586 (dealing in stolen property) (Ex. A at 116–25, 133–37).  On March 26, 2004, the court determined Petitioner qualified as an HFO (Ex. B).  The court pronounced sentence as follows:

> His, I guess, what we're going to do—and there are so many different charges.  You guys are going to have to help me with this.  I guess, what I'm going to do is I'm going to run all the felonies concurrent.  I don't know how to do this.  Because I'm going to need some time for restitution.  Y'all help me craft this.

> I guess what I'll do is, maybe I'll do 03-483, Count 1, I will, do five years state prison with credit for time served, which is going to be 426 days.  I'm going to follow that by one year of community control.

> And I'm going to follow that because it appears that without the insurance company, you've still got roughly $8,000 in restitution without the ones that I'm going to reserve on.

> So, I'm going to give you a substantial—did I say the one year of community control?

> MR. WILLIAMS [defense counsel]:  Yes.

> THE COURT:  I'm going to give you a substantial period of probation in order to allow you to pay off your probation [sic] with an early term provision should those get, paid. . . .

> I am not going to reduce the insurance companies to civil liens at this point in time because, frankly, I don't know what his life is going to hold.  He may come out and become a lawyer and be making money like Fred Levin, who knows.  So, we'll have to take that into consideration at the time.

> I think what I'll do is I'll give him—let's see, five, six—I could give him nine years probation, with an early term[ination] provision.  And that—it's going to be run concurrent with any of the 15-year felonies.

> On all of the five-year felonies, I'm going to give one year community control concurrent, and four years of probation—followed by four years of probation concurrent because that will give me some time—you know, wait—wait, wait, wait.  I'm going to have to redo this because of the fleeing and attempting to elude, there's no probation—I mean, there is no restitution.  So, I don't need to do it on that case.  Okay, hold on, guys.

> MR. WILLIAMS:  Well, then, say all but.  Just say, with the exception of—

THE COURT: We'll go off the record for a minute.

(Off-the-record discussion held)

THE COURT: Okay. I will leave it the way it is. On all of the 15-year cases, it's going to be five years state prison, followed by one year of community control, followed by nine years probation, all concurrent.

On the—all of the five-year felonies, they're going to be one year community control, followed by four years of probation concurrent.

All of the misdemeanors are going to be—do we have any restitution on those?

MR. CASEY [the prosecutor]: No, I don't think. So, I would suggest, they all be credit for time served.

THE COURT: Then, those are all going to be all time served cases.

(Ex. B at 269–75, 287–323). The court ordered Petitioner's sentences to run concurrent with any sentence he was currently serving, and tolled the community control and probation until Petitioner was released from incarceration (*id.*). Petitioner did not appeal the judgment.

On December 31, 2007, a warrant issued for Petitioner's violation of community control supervision, charging one violation (Ex. B at 324–27). On July 24, 2008, Petitioner pled nolo contendere to the violation (Ex. C at 344–84). The court revoked his community control supervision and imposed probationary sentences in the same terms as imposed at his sentencing on the original charges (*id.*).

On March 30, 2009, a warrant issued for Petitioner's violation of probation, charging violations of three conditions of probation (Ex. C at 406–07). On August 6, 2009, Petitioner pled nolo contendere to one of the violations and guilty to the remaining two (*id.* at 417–30). On August 19, 2009, Petitioner was adjudicated guilty of the violations and sentenced as an HFO to 369.675 months of imprisonment (his lowest permissible sentence pursuant to the Criminal Punishment Code Scoreshe et)[2] on Count 1 in Case No. 2003-CF-586 (burglary of a dwelling while armed, a life felony), and concurrent terms of thirty (30) years of imprisonment on Count 1 in all cases and Count 2 in Case

---

[2] Petitioner's lowest permissible sentence was higher on his VOP scoresheet because he received 12 additional points for a community sanction violation (*compare* Ex. B at 279–83 *with* Ex. C at 480–84).

No. 2003-CF-586 (*id.* at 470–78, 485–92).  The court sentenced him to non-HFO concurrent terms of 369.675 months on the remaining felony counts, all terms to run concurrently, with credit for 101 days plus all time previously served in the Florida Department of Corrections ("FDOC") (*id.*).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D09-5064 (Exs. F, M).  Petitioner's counsel filed a brief, pursuant to Anders v. California, 386 U.S. 738 (1967), asserting there were no meritorious arguments to support the contention that reversible error occurred in the trial court (*id.*).  Petitioner filed a pro se initial brief (Ex. I).  The First DCA affirmed the judgment per curiam without written opinion on November 4, 2010, and denied his motion for rehearing on January 6, 2011 (Exs. J, L, M).  Springer v. State, 50 So. 3d 1140 (Fla. 1st DCA 2010) (Table).  Petitioner did not seek further review.

On January 27, 2011, Petitioner filed a motion for postconviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. N at 1–40).  In an order rendered May 31, 2011, the state circuit court denied the motion in part and granted it in part (*id.* at 41–49).  The court granted it only to correct the illegal sentences imposed in Count 1 of Case No. 2003-CF-2963 and Count 1 of Case No. 2003-CF-2964, to reflect that Petitioner was sentenced to ten (10) years of imprisonment on those counts, instead of thirty (30) years, and Petitioner was entitled to all time previously served in the FDOC and all applicable jail credit (*id.*).  Petitioner appealed the decision to the First DCA, Case No. 1D11-4263 (Ex. O).  The First DCA affirmed the judgment per curiam without written opinion on March 7, 2012, with the mandate issuing April 3, 2012 (Exs. P, Q).  Springer v. State, 83 So. 3d 716 (Fla. 1st DCA 2012) (Table).

On July 18, 2011, Petitioner filed a motion to correct illegal sentence, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (Ex. R at 1–5).  In an order rendered September 28, 2011, the state circuit court denied the motion (*id.* at 6–9).  Petitioner appealed the decision to the First DCA, Case No. 1D11-5759 (Ex. S).  The First DCA affirmed the judgment per curiam without written opinion on March 7, 2012, with the mandate issuing April 3, 2012 (Exs. W, X).  Springer v. State, 83 So. 3d 716 (Fla. 1st DCA 2012) (Table).

On December 12, 2011, Petitioner filed a petition for writ of habeas corpus in the First DCA, Case No. 1D11-6785, alleging ineffective assistance of appellate counsel (Ex. Z).  The First DCA denied the petition on January 12, 2012 (*see* Ex. Y).  Springer v. State, 77 So. 3d 242 (Fla. 1st DCA

2012) (Mem).  Petitioner sought review in the Florida Supreme Court, Case No. SC12-176 (*id.*).  The

state supreme court dismissed the petition for lack of jurisdiction on January 31, 2012 (*id.*).  Springer

v. State, 81 So. 3d 415 (Fla. 2012) (Table).

Petitioner filed the instant federal habeas action on June 7, 2012 (doc. 1).  Respondent "asserts

all available procedural bars and waives no procedural defenses" (doc. 24 at 1).

II.      STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a

writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon

a showing that his custody is in violation of the Constitution or laws of the United States.  As the

instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas

review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective

Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant

part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any claim
> that was adjudicated on the merits in State court proceedings unless the adjudication
> of the claim–
>
> > (1)   resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law, as determined
> > by the Supreme Court of the United States; or
> > (2)   resulted in a decision that was based on an unreasonable
> > determination of the facts in light of the evidence presented in the State court
> > proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v.

Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was

described by Justice O'Connor as follows:

---

[3] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for
the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion
(529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas,
and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was
joined by Justices Souter, Ginsburg, and Breyer.

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If

the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim. Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See* Henderson v. Campbell, 353 F.3d 880, 890 n. 15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See* Gill, *supra* at 1291 (citing Harrington, 131 S. Ct. at 786). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in

a prior decision of the Supreme Court. *See* <u>Harrington</u>, 131 S. Ct. at 786; *see also* <u>Gill</u>, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* <u>Miller-El</u>, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); <u>Jones v. Walker</u>, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* <u>Gill</u>, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* <u>Panetti v. Quarterman</u>, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662

(2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

---

[4] Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
        (A)  the applicant has exhausted the remedies available in the courts of the State; or
        (B) (i)  there is an absence of available State corrective process; or
            (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982). In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." Anderson, 459 U.S. at 7 (internal quotation marks omitted). The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim. Id., 459 U.S. at 7 and n.3. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364. The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[5] The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." Duncan, 513 U.S. at 365–66. More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that

---

[5] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal. Presented with a state constitutional claim, the state court applied state law in resolving the appeal. 513 U.S. at 366.

does so." Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Id., 541 U.S. at 32. This language, while not part of the Court's holding, provides helpful instruction. With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[6]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement. After Duncan, however, the Eleventh Circuit has taken a more narrow approach. For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . .

---

[6] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. Id.

.,," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution. *Id.* at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001), or in a manifestly unfair manner. Ford v. Georgia, 498 U.S. 411, 424–25,

111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[7]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate.  Id.  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  Id.

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

---

[7] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

*Id.* Although a habeas petitioner asserting a convincing claim of actual innocence need not prove diligence to overcome a procedural bar, timing is a factor relevant in evaluating the reliability of a petitioner's proof of innocence. *See* <u>McQuiggin v. Perkins</u>, — S.Ct. —, No. 12-126, 2013 WL 2300806, at *11 (2013). As the Court stated in <u>Schlup</u>, "[a] court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of . . . evidence [of actual innocence]." 513 U.S. at 332; *see also* <u>House</u>, 547 U.S. at 537.

Within this framework, the court will review Petitioner's claims.

## IV. PETITIONER'S CLAIMS

A. <u>Ground One: "Petitioner was denied conflict free counsel as guaranteed by the Sixth Amendment of the United States Constitution and as adopted by the Florida Constitution."</u>

Petitioner asserts that the attorney who represented him on the original charges in 2003 and 2004, Jay Williams, was appointed by the trial court because the public defender's office had a conflict of interest representing him (doc. 1 at 6; doc. 10 at 4–5). Petitioner contends Attorney Williams labored under a conflict of interest, because prior to representing Petitioner, Williams represented Petitioner's wife, Patricia Springer (formerly Harris), who provided information favorable to the State in Petitioner's cases (*id.*). Petitioner additionally contends each of the public defenders who represented him in the VOP proceedings labored under a conflict of interest, because the public defender's office had been "conflicted out" of the proceedings on his original charges (*id.*). Petitioner contends that because his claim is based upon a conflict of interest, he is not required to show he suffered actual prejudice from the representation, only that he was not provided conflict-free counsel (*id.*). Petitioner asserts he raised this claim in his state habeas petition, and the First DCA adjudicated the claims on the merits (*id.*).

Respondent contends Petitioner failed to exhaust his claim in the state courts, because he failed to raise it on direct appeal or in his Rule 3.850 motion (doc. 24 at 20). Respondent contends the only claim Petitioner presented to the state courts on the conflict of interest issue was a claim of ineffective assistance of appellate counsel, based upon appellate counsel's failure to raise the conflict issues on direct appeal of the second VOP (*id.*). Therefore, the claim Petitioner presents in his federal petition is unexhausted and procedurally barred (*id.*). Respondent additionally contends notwithstanding the procedural bar, Ground One is without merit (*id.*).

In Petitioner's reply, he argues he presented his claim in his state habeas petition, even though he "made mention that appellate counsel failed to present this claim on direct [appeal]" (doc. 32 at 9). He additionally argues he is entitled to a merits review of his claim, because he was not represented by counsel in the Rule 3.850 proceeding (*id.*).

Upon review of the state court record, it is clear that Petitioner did not fairly present to the state courts the claim he presents here, that is, violation of his right to conflict-free counsel in the circuit court proceedings (the proceeding on the original charges and the VOP proceedings). Petitioner did not raise the issue on direct appeal or in any of his post-conviction motions filed in the state circuit court. Further, Petitioner did not fairly present his claim in his state habeas petition. In his state habeas petition, Petitioner claimed a violation of his right to <u>effective assistance of appellate counsel ("IAAC") in the appellate court proceeding on direct appeal of the second VOP</u> (Ex. Z at 17–18). He argued the conflict issue <u>not</u> as a substantive claim independent of the IAAC claim, but as the underlying basis for the IAAC claim. This did not constitute fair presentation of the conflict claim. Petitioner's failure to present his claim to the state courts renders it unexhausted. Further, any attempt to return to state court would be futile, because a second direct appeal of any of the circuit court proceedings is unavailable, and a second Rule 3.850 motion would be properly dismissed as successive, pursuant to Rule 3.850(f). Therefore, Ground One is procedurally barred from federal review.

Additionally, Petitioner failed to show he is entitled to federal review through the "cause and prejudice" exception to the procedural bar. Although Petitioner exhausted a claim of IAAC with regard to appellate counsel's failure to raise the conflict issue on appeal of the second VOP, he failed to demonstrate that the First DCA's denial of that claim was contrary to or an unreasonable application of clearly established federal law.[8] The standard for evaluating a claim of ineffective

---

[8] Petitioner may not claim that his failure to exhaust was caused by ineffective assistance of appellate counsel on direct appeal of his original conviction or the first VOP conviction, because he did not present either of those IAAC claims in a state habeas petition to the First DCA; instead, he presented only a claim of IAAC with regard to the direct appeal of his second VOP conviction. *See* Murray, 477 U.S. at 488 (although ineffective assistance of counsel which rises to the level of a constitutional deprivation can serve as cause for purposes of a procedural default analysis default, the issue of ineffective assistance must first be presented as an independent state claim and exhausted in the state courts); Orazio v. Dugger, 876 F.2d 1508 (11th Cir. 1989). Further, the limitations period set forth in Rule 9.141(d)(5) of the Florida Rules of Appellate Procedure has expired; therefore, any such claim could not serve as cause for the procedural default of Ground One.

Case No.: 3:12cv284/RV/EMT

assistance of appellate counsel is the standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). *See* <u>Smith v. Robbins</u>, 528 U.S. 259, 285, 120 S. Ct. 746, 145 L. Ed. 2d 746 (2000) (citation omitted). To obtain relief under <u>Strickland</u>, a petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 687–88. The Eleventh Circuit has issued several decisions interpreting the <u>Strickland</u> standard with regard to claims of ineffective assistance of appellate counsel. Appellate counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit." <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting <u>Alvord v. Wainwright</u>, 725 F.2d 1282, 1291 (11th Cir. 1984)).

Here, Petitioner's conflict of interest claim is reasonably considered to be without merit. There is a limited presumption of prejudice where counsel has an actual conflict of interest. *See* <u>Strickland</u>, 466 U.S. at 691 (citing <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980)). This presumption, which requires automatic reversal of a conviction, applies only where an attorney is forced to represent co-defendants over his own objection, unless the court has found no conflict. <u>Mickens v. Taylor</u>, 535 U.S. 162, 167–68, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002) (discussing <u>Holloway v. Arkansas</u>, 435 U.S. 475, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978)). The <u>Mickens</u> Court noted that while the Courts of Appeals had "unblinkingly" applied <u>Sullivan</u> to all kinds of purported ethical conflicts: "[T]he language of <u>Sullivan</u> itself does not clearly establish, or indeed even support, such expansive application. '[U]ntil,' it said, 'a defendant shows that his counsel *actively represented* conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.'" <u>Mickens</u>, 535 U.S. at 175 (quoting <u>Sullivan</u> with added emphasis, other citations omitted). Thus, the Eleventh Circuit held that Supreme Court precedent does not clearly establish that the <u>Sullivan</u> rule of presumed prejudice applies in other conflict situations, that is, outside concurrent, multiple representation circumstances. *See* <u>Schwab v. Crosby</u>, 451 F.3d 1308, 1324–25, 1327–28 (11th Cir. 2006). In conflict situations where prejudice is not presumed, a petitioner must demonstrate that an adverse effect on counsel's performance flowed from the conflict of interest. *See* <u>Hunter v. Sec'y Dep't of Corr.</u>, 395 F.3d 1196, 1201–02 (11th Cir. 2005); <u>Herring v. Sec'y, Dep't of Corr.</u>, 397 F.3d 1338, 1357–58 (11th Cir. 2005).

Here, Petitioner does not allege that Attorney Williams engaged in concurrent representation of both him and Patricia (Harris) Springer. He alleges only that Attorney Williams "formerly" and "previously" represented Ms. Springer (doc. 1 at 6; doc. 10 at 4; *see also* doc. 24, Ex. Z at 18–19).[9] Attorney Williams' prior representation of Ms. Springer does not present an actual conflict of interest with regard to his representation of Petitioner in the 2003–2004 proceedings. Petitioner also failed to show that either of the public defenders who represented him in the VOP proceedings concurrently represented a co-defendant or otherwise had an actual conflict of interest. The fact that the public defender's office had a conflict representing Petitioner in the proceedings on the original charges in 2003–2004 does not suggest an actual conflict existed with regard to either of the VOP proceedings. Petitioner thus failed to demonstrate that his counsel in any of the proceedings actively represented conflicting interests. Furthermore, Petitioner failed to demonstrate that an adverse effect on counsel's performance flowed from the alleged conflict. Therefore, he has not shown that his appellate counsel was ineffective for failing to raise the conflict of interest issue on direct appeal of his second VOP conviction.

Additionally, Petitioner's argument that the post-conviction court's failure to appoint counsel in the Rule 3.850 proceeding constitutes cause under Martinez v. Ryan, 132 S. Ct. 1309 (2012) is unavailing. In Martinez, the Supreme Court held that if "a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim . . ." when (1) "the state courts did not appoint counsel in the initial-review collateral proceeding" or (2) "appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective" pursuant to Strickland [v. Washington, 466 U.S. 668 (1984)]." Martinez, — U.S.—, —, 132 S. Ct. 1309, 1318, 182 L. Ed. 2d

---

[9] The court takes judicial notice of information available on the database maintained by the Escambia County Florida Clerk of the Circuit Court, viewed September 9, 2013, http://www.escambiaclerk.com/, which reveals that J. Williams represented Patricia Harris in Case No. 1994-CF-408, which was pending from 1994–1996, on a charge of dealing in stolen property. *See* Fed. R. Evid. 201; United States v. Berrojo, 628 F.3d 368, 369 (5th Cir. 1980) ("The doctrine of judicial notice permits a judge to consider a generally accepted or readily verified fact as proved without requiring evidence to establish it."); *see also* Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (district court permissibly looked to docket sheets in ruling on motion to dismiss because "docket sheets are public records of which the court could take judicial notice"); In re Salem, 465 F.3d 767, 771 (7th Cir. 2006) (taking judicial notice of state court dockets and opinions); Dawson v. Mahoney, 451 F.3d 550, 551 (9th Cir. 2006) (taking judicial notice of state court orders and proceedings);United States v. Mercado, 412 F.3d 243, 247–48 (1st Cir. 2005) (taking judicial notice of state court docket entries).

272 (2012). In such instances, the habeas petitioner "must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.*

In the instant case, Petitioner has not shown that his conflict of interest claim had some merit, as discussed *supra*, therefore, he has not demonstrated he was prejudiced by the post-conviction court's failure to appoint counsel in the Rule 3.850 proceeding. Accordingly, he has not shown cause for his failure to raise his conflict of interest claim in his Rule 3.850 motion.

In light of Petitioner's failure to exhaust Ground One, and his failure to establish cause and prejudice for his failure to do so, Petitioner is not entitled to federal review of Ground One.

B.    Ground Two: "Petition[er] was denied equal protection under the law."

Petitioner argues he was less culpable than either of his two co-defendants, and his physical and medical limitations restricted his ability to participate in the crimes (doc. 1 at 6; doc. 10 at 5–7). He argues he also was more truthful and cooperative with law enforcement than either co-defendant (*id.*). He asserts the prosecutor and his co-defendants admitted this, yet neither of his co-defendants received more than ten (10) years of imprisonment, while he received a thirty-one (31) year sentence (*id.*). Petitioner states one co-defendant, who had more charges than Petitioner and an equal or more lengthy prior criminal record, was sentenced to ten (10) years, with seven (7) years suspended; the co-defendant served the three (3) years and then violated his supervision and was sentenced to the remaining seven (7) years (doc. 10 at 6). He states the other co-defendant, who was the admitted "mastermind" and had the most lengthy criminal history, was sentenced to ten (10) years (*id.*). Petitioner argues his lesser culpability and greater cooperation did not justify such a dramatic disparity in sentencing, and such disparity violated his equal protection rights (*id.*). Petitioner asserts he raised this claim in his Rule 3.850 motion and his initial brief on direct appeal of the second VOP (*id.*).

With regard to exhaustion, Respondent states Petitioner raised a similar claim in state court (doc. 24 at 20). Respondent contends there is no clearly established federal law that supports the notion that disparate sentencing of co-defendants violates equal protection, and the only Supreme Court case that appears to have addressed the issue, that is, Howard v. Fleming, 191 U.S. 126, 135–36, 14 S. Ct. 49 91903), held otherwise (*id.* at 21). Therefore, Petitioner cannot show that the

state court's adjudication of this claim was contrary to or an unreasonable application of clearly established federal law (*id.*).

The record shows that Petitioner raised his equal protection claim on direct appeal of his second VOP conviction (Ex. I at 5–8). The First DCA affirmed the conviction without written opinion (Ex. J).[10]

In Howard v. Fleming, 191 U.S. 126, 24 S. Ct. 49, 48 L. Ed. 121 (1903), the Supreme Court considered whether a state trial court violated the constitutional guarantee of equal protection during the sentencing of three co-defendants convicted of conspiracy. 191 U.S. at 126. The court sentenced co-defendants Howard and Hawley to ten-year terms of imprisonment, and co-defendant Daly to only a seven-year term. *Id.* The Court rejected Howard and Hawley's equal protection argument stating, "Doubtless there were sufficient reasons for giving to one of the conspirators a less term than the others. At any rate, there is no such inequality as will justify us in setting aside the judgment against the two." *Id.* at 136.

Howard did not clearly establish that a sentencing court's imposition of a more severe sentence upon a less culpable co-defendant violates the Equal Protection Clause. Further, the state court record demonstrates the court imposed the 31-year sentence of imprisonment only after Petitioner twice violated his probation/community control supervision, a circumstance which Petitioner does not allege was present in either of his co-defendant's cases. Petitioner failed to demonstrate that the state court's denial of his equal protection claim was contrary to or an unreasonable application of clearly established federal law. Therefore, he is not entitled to relief on Ground Two.

C.     Ground Three: "Defendant was denied procedural due process of law where the lower tribunal failed to orally pronounce a sentence on one count of one case number, and was subsequently without jurisdiction to resentence Petitioner for violations of probation it never imposed; court was outside the statutory limitation of 5 years; entire sentence in Count 1 of Case 03-586 is completely invalid and has a poisonous tree effect on all other case(s) and count(s)."

---

[10] Petitioner also raised this claim in his Rule 3.850 motion, but the state court did not adjudicate the claim on the merits and instead denied it as procedurally barred, because it could have been raised on direct appeal (Ex. N at 17–20, 46).

Petitioner asserts the trial court failed to orally pronounce sentence on Count 1of Case No. 2003-CF-586, armed robbery (doc. 1 at 7; doc. 10 at 7–11). He alleges the court orally pronounced sentences for the "15 year felonies" and the "5 year felonies," but the armed robbery count was a life felony (*id.*). He contends the court thus lacked jurisdiction to convict and sentence him of violating his probation on that count (*id.*).

Respondent asserts Petitioner raised a similar claim in state court, but Petitioner argued it as a purely state law issue (doc. 24 at 21–22). Respondent further contends Petitioner failed to demonstrate the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based upon an unreasonable determination of the facts (*id.*).

In Petitioner's reply, he asserts he raised this claim as a denial of due process, which is guaranteed by both the United States and Florida Constitutions (doc. 32 at 13). He argues the state court failed to follow clearly established law, specifically, Rule 3.700(b) of the Florida Rules of Criminal Procedure (*id.*). He contends the state court's failure to follow its own rules satisfies the standard set forth in § 2254(d)(1) and (2) (*id.* at 13–14). Petitioner additionally argues Respondent may not assert a procedural default defense, because he was unrepresented in the Rule 3.850 proceeding (*id.* at 12).

The state court record demonstrates that Petitioner did not present a federal claim to the state courts on this issue. He presented a similar claim of trial court error in his Rule 3.800(a) motion, but he argued only a state law basis for his claim, namely, a violation of Rule 3.700(b) of the Florida Rules of Criminal Procedure, Florida Statutes § 775.14, and opinions issued by the Florida appellate courts (Ex. R at 3–5).[11] The state circuit denied the motion on purely state law grounds (*id.* at 6–9).

---

[11] Prior to filing his Rule 3.800(a) motion, Petitioner sought to amend his Rule 3.850 motion to add a claim that the trial court erred by failing to pronounce sentence on the life felony and thus lacked jurisdiction to sentence him in the VOP as to that count (*see* Ex. N at 148–49). Petitioner relied purely on state law for his claim, and did not present any federal grounds for relief on this claim (*id.*). The state circuit court denied the motion to amend on the state procedural ground that a Rule 3.850 motion may be amended <u>prior to</u> the trial court's ruling on the original motion, but Petitioner had filed his motion to amend <u>after</u> the court had rendered a final order denying his Rule 3.850 motion (*id.* at 163–64 (citing <u>Kline v. State</u>, 858 So. 2d 1257 (Fla. 1st DCA 2003)). Petitioner then filed a motion for rehearing of the court's order denying his Rule 3.850 motion, and he attempted to raise the new claim in that motion (*id.* at 161, 165–66). The court denied as improper Petitioner's attempt to raise a new claim in his motion for rehearing (*id.* at 171 (citing <u>Ayala-Laies v. State</u>, 16 So. 3d 244, 246 (Fla. 4th DCA 2009)). The court advised Petitioner he could raise his claim that the court allegedly failed to impose sentence on the life felony, in a motion to correct illegal sentence (*id.* at 172). The state circuit court clearly did not address the merits of Petitioner's claim.

Petitioner appealed the decision to the First DCA, again arguing only a state law basis for his claim (Ex. S at 19–22). The State filed a responsive brief, as directed by the First DCA (*see* Ex. T), relying upon state law for its argument that Petitioner was not entitled to relief (Ex. U). The First DCA affirmed the decision without written opinion (Ex. W).

Federal habeas relief is available to correct only constitutional injury. 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67–68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) (errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief); Wainwright v. Goode, 464 U.S. 78, 83–84, 104 S. Ct. 378, 78 L. Ed. 2d 187 (1983); Barclay v. Florida, 463 U.S. 939, 958–59, 103 S. Ct. 3418, 77 L. Ed. 2d 1134 (1983) ("Mere errors of state law are not the concern of this court . . . unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.") (citations omitted); Engle v. Isaac, 456 U.S. 107, 102 S. Ct. 2976, 73 L. Ed. 2d 1361 (1981) Carrizales v. Wainwright, 699 F.2d 1053, 1053–54 (11th Cir. 1983). Errors which do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief. Questions of state law and procedure "rarely raise issues of federal constitutional significance." Tejada v. Dugger, 941 F.2d 1551, 1560 (11th Cir. 1991). State law issues may be reviewed in this federal forum only when the alleged errors were "so critical or important to the outcome of the trial to render 'the entire trial fundamentally unfair.'" *Id.* (quoting Carrizales, *supra*). The Supreme Court "ha[s] defined the category of infractions that violate 'fundamental fairness' very narrowly." Estelle, 502 U.S. at 352. "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process." Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988). Further, to gain federal habeas review, the petitioner must specifically raise his claims as federal constitutional issues, both in state and federal court. *See* Duncan, 513 U.S. at 365–66.

Here, Petitioner's claim involves purely state law issues, despite his couching it in terms of due process. Further, Petitioner did not fairly present a federal basis for his claim to the state courts. Therefore, it is unexhausted. Moreover, Petitioner failed to demonstrate that the state court's failure

---

Petitioner appealed the denial of his Rule 3.850 motion to the First DCA, and argued as Issue One that the lower court erred by failing to allow him to amend his motion (Ex. O at 15–16). The First DCA affirmed the lower court's decision (Ex. P).

to identify the armed burglary count (Count 1 in Case No. 2003-CF-586) as a life felony, and instead referring to it as a 15-year felony in orally pronouncing sentence deprived the court of jurisdiction to subsequently revoke Petitioner's probation as to that count. In instances of an outright variance between the oral and written versions of the same sentence, the conflict is resolved in favor of the oral pronouncement. *See* United States v. McDonald, 672 F.2d 864 (11th Cir. 1982); United States v. Kindrick, 576 F.2d 675 (5th Cir. 1978). However, where there is mere ambiguity rather than outright conflict between the oral and written versions of a judgment or sentence, the written judgment or sentence may be used to clarify the court's intent. *See* Villano v. United States, 816 F.2d 1448 (10th Cir. 1987); Henley v. Heritage, 377 F.2d 847 (5th Cir. 1964); Chapman v. United States, 289 F.2d 539, 544 (5th Cir. 1961). In cases where ambiguity exists, the intent of the sentencing judge controls, and is to be determined by reference to the record as a whole, including the written order. *See* Schurmann v. United States, 658 F.2d 389 (5th Cir. 1981); Kindrick, *supra*.

In this case, there is no outright variance between the oral and written versions of Petitioner's sentence as to the armed burglary count. The court's oral pronouncement was that on all of the counts charging 15-year felonies, Petitioner was sentenced to five (5) years in state prison, followed by one year of community control, followed by nine (9) years of probation, all sentences to run concurrently (Ex. B at 270–71). The written sentence identifies Count 1 in Case No. 2003-CF-586 as a life felony, and sentences Petitioner to a term of 5 years of imprisonment followed by a period of 1 year of community control followed by 9 years of probation (*id.* at 287, 290). This written pronouncement did not conflict with the court's failure to orally pronounce sentence as to the life felony. Therefore, review of the record as a whole is appropriate to discern the judge's intent. *See* Schurmann, *supra*. The sentence was clearly specified in the written judgment and sentence. The record and the signed orders after Petitioner's original sentencing leave no doubt that the court intended to impose a term of imprisonment of 5 years of imprisonment followed by a period of 1 year of community control followed by 9 years of probation. Under these circumstances, Petitioner has not demonstrated a violation of his due process rights. Therefore, he is not entitled to relief on Ground Three.

D.    Ground Four: Petitioner was denied substantial [sic] and procedural due process of law where the court failed to enforce specific performance of his plea agreement and allowed the State to violate the terms and conditions thereof."

Petitioner alleges his plea agreement was very specific that the State would make no negative sentence recommendations (doc. 1 at 7; doc. 10 at 11–12). He claims that the prosecutor violated this provision at the second VOP hearing by vehemently seeking a harsh sentence for the VOP (*id.*). Petitioner contends the state court was obligated to enforce the terms of the plea agreement (*id.*). He alleges he raised this claim in his Rule 3.850 motion (*id.*).

Respondent states Petitioner raised a similar claim in state court (doc. 24 at 23). Respondent argues Petitioner failed to identify any particular language either in the plea agreement or spoken by the prosecutor during the plea hearing on the original charges, where the State agreed to make no negative sentence recommendations (*id.*). Respondent further contends even if the prosecutor told Petitioner he would not make any negative sentence recommendations in the original sentencing proceeding, that agreement would have applied only to that sentencing, not sentencing on the VOP (*id.*). Therefore, the state court's adjudication of this claim was not contrary to or an unreasonable application of clearly established federal law, nor was it based upon an unreasonable determination of the facts (*id.*).

1.      Clearly Established Federal Law

The clearly established federal standard applicable to claims of breached plea agreements is set forth in Santobello v. New York, 404 U.S. 257, 262, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello, 404 U.S. at 262.

2.      Federal Review of State Court Decision

Petitioner raised this claim as Issue Seven in his Rule 3.850 motion (Ex. N at 15). The state circuit court adjudicated the claim as follows:

> The Defendant claims that he was denied specific performance of his plea agreement. This clam is without merit. Any agreement in 2004 that the State would not request a harsh sentence at the Defendant's *original* sentencing hearing would not apply to the Defendant's resentencing in 2009 upon the revocation of his probation. In other words, at the Defendant's resentencing due to a violation of probation, the State would no longer be bound by any term of the original plea agreement.
>
> Furthermore, as to the revocation of probation proceedings, the Defendant agreed when he admitted his probation violations that "no one has promised [him]

anything as it [sic] regards to [his] sentence or anything else." Attachment 4, at 11. A Defendant may not go behind his sworn statement in post-conviction proceedings. As the Fourth District Court of Appeal has explained, "[a] plea conference is not a meaningless charade to be manipulated willy-nilly after the fact; it is a formal ceremony, under oath, memorializing a crossroads in the case. What is said and done at a plea conference carries consequences." Scheele v. State, 953 So. 2d 782, 785 (Fla. 4th DCA 2007).

(Ex. N at 45–46). Petitioner appealed this issue to the First DCA (Ex. O at 34–35). The First DCA affirmed the lower court's decision without written opinion (Ex. P).

The written Sentence Recommendation signed by the parties in February of 2004, during the proceedings on the original charges, included no provision that the State would not make any negative sentencing recommendations (Ex. A at 133–37). Additionally, the transcript of the plea proceeding reflects there was no promise by the prosecutor that the State would not make any negative sentencing recommendations (id. at 96–132). The only promises the prosecutor made were (1) to seek only an HFO sanction, the "least damaging enhancement" (even though it appeared Petitioner also qualified for a Prison Releasee Reoffender sanction), which would enable the sentencing court to sentence Petitioner below the sentencing guidelines (based, for example, on "the statutory mitigator of substantial assistance"), and (2) to agree that Petitioner would receive credit on his sentence "from the time in which he was first incarcerated to the beginning of these cases" (id. at 105–10, 120–21, 135). Petitioner failed to show that the prosecutor failed to fulfill either of these promises. Moreover, Petitioner failed to show that the State made any promises with respect to his plea in either of the VOP proceedings. Petitioner does not allege there was a written plea agreement filed in either of those proceedings, nor does the record indicate the parties entered a written agreement in either proceeding (Ex. C). Further, Petitioner does not allege, nor do the transcripts of the plea proceedings indicate, that the State orally agreed to refrain from making negative sentencing recommendations in either VOP proceeding (id. at 344–84, 417–78).

Petitioner failed to demonstrate that the state court's adjudication of this claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established federal law. Therefore, he is not entitled to relief on Ground Four.

E.     Ground Five: "Petitioner was denied procedural due process of law where the lower tribunal failed to abide by the mailbox rule and did not allow Petitioner to amend his Rule 3.850 motion."

Petitioner states he filed, pursuant to the "mailbox rule,"[12] a motion to amend his Rule 3.850 motion on June 3, 2011 (doc. 1 at 7; doc. 10 at 12).  He states he received the state court's order denying his Rule 3.850 motion on June 6, 2011 (*id.*).  He states he filed a motion for rehearing, but the court denied him leave to amend his motion and denied his motion for rehearing (*id.*).  Petitioner contends he was legally entitled to amend his motion (*id.*).  He alleges he raised this claim in his motion for rehearing and his initial brief on appeal of the circuit court's denial of his Rule 3.850 motion (*id.* at 8).

Respondent contends Petitioner failed to exhaust this claim, because he did not fairly present it as a federal claim to the state courts (doc. 24 at 24).  Respondent additionally contends that alleged defects in state collateral proceedings do not provide a basis for federal habeas relief (*id.*).

Due process violations during state post-conviction proceedings do not provide a basis for habeas relief.  *See* Carroll v. Sec'y, Dep't of Corr., 574 F.3d 1354, 1365 (11th Cir. 2009); Quince v. Crosby, 360 F.3d 1259, 1262 (11th Cir. 2004).  The habeas statute permits federal courts to grant habeas relief to state prisoners on the ground that they are "in custody pursuant to the judgment of a State court" in violation of federal law.  28 U.S.C. § 2254(a).  State post-conviction proceedings are not the "judgment" that resulted in the prisoner's detention.  *See* Carroll, 574 F.3d at 1365 ("[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment—i.e., the conviction itself . . . .").  Post-conviction proceedings are instead "civil in nature and are not part of the criminal proceeding itself."  Pennsylvania v. Finley, 481 U.S. 551, 556–57, 107 S. Ct. 1990, 1994, 95 L. Ed. 2d 539 (1987).  Therefore, procedural violations during state post-conviction proceedings are "issues unrelated to the cause of the petitioner's detention." Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987).  As such, they cannot form the basis for habeas relief.  *See, e.g.*, Carroll, 574 F.3d at 1365 (failure to hold an evidentiary hearing in a state post-conviction proceeding was not a basis for habeas relief); In re Rutherford, 437 F.3d 1125, 1127 (11th Cir. 2006) (state post-conviction court's denial of petitioner's request to obtain mental health records of a person petitioner alleged had actually committed the crime was not a basis for habeas

---

[12] Pursuant to the "mailbox rule," a document is deemed filed by a prisoner on the date the prisoner delivered it to prison authorities for forwarding to the court.  *See* Houston v. Lack, 487 U.S. 266, 276, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988).

relief); <u>Quince</u>, 360 F.3d at 1262 (state post-conviction judge's failure to recuse himself from presiding over petitioner's post-conviction hearing did not provide basis for habeas relief); *see also, e.g.*, <u>Ramires v. Sec'y of Fla. Dep't of Corr.</u>, No. 3:11cv435/MW/CJK, 2013 WL 2432937, at *15 (N.D. Fla. June 4, 2013) (unpublished) (state post-conviction court's failure to provide petitioner an opportunity to amend his claims did not provide basis for habeas relief); <u>Bishop v. Buss</u>, No. 3:08cv466/MCR/CJK, 2011 WL 2713873, at *8 (N.D. Fla. June 9, 2011) (unpublished) (same), *Report and Recommendation Adopted by* 2011 WL 2712738 (N.D. Fla. July 12, 2011) (unpublished).

The alleged due process violation raised in Ground Five occurred during a state post-conviction proceeding, not during the underlying criminal conviction proceedings. The process afforded Petitioner during the post-conviction proceeding therefore had no bearing on the judgment that led to his conviction and sentence. A writ of habeas corpus is not the proper remedy for this alleged wrong.

    F.    <u>Ground Six: "Petitioner was denied substantive and procedural due process of law as regards his advisement of maximum possible penalties per case/count should he enter the plea agreement (by court) and the subsequent sentences exceeding what was advised could be received on all second and third degree felonies."</u>

        <u>Ground Seven: "Petitioner was denied substantive and procedural due process of law where the sentencing court misadvised Petitioner as to what his discretion would be if Petitioner agreed to be an habitual offender, then failing to properly impose habitual offender sanctions after it designated Petitioner as an habitual felony offender and later relying on those same misadvisements [sic] and failures to impose habitual offender sanctions."</u>

Petitioner contends the trial court in the proceeding on the original charges failed to advise him of the maximum possible penalties he could receive for the second and third degree felonies (doc. 1 at 8–9; doc. 10 at 12–22). He contends he was advised at the plea hearing that if he agreed to the HFO designation, the sentencing court would not be bound by the Criminal Punishment Code ("CPC") (which established his lowest permissible sentence of imprisonment ("Guidelines sentence") as 360.6 months), and the court would have discretion to sentence him to a non-prison sentence up to double the statutory maximum for each count (doc. 1 at 9). Petitioner alleges the court erroneously advised him that the maximum term of imprisonment he could receive on the third degree felonies was five (5) years, when in fact the court was required to impose the Guidelines sentence, because the HFO sanction was not imposed on the third degree felonies, and the court therefore had no discretion to

depart from the Guidelines sentence, pursuant to Florida Statute § 921.0024 (doc. 1 at 8–9; doc. 10 at 14–17). Petitioner contends the court also misadvised him as to the maximum possible penalties he faced for the second degree felonies (doc. 1 at 8; doc. 10 at 18–22). He alleges the court erroneously advised him that the maximum term of imprisonment he could receive on the second degree felonies was fifteen (15) years, when the HFO statute required the court to sentence him above the statutory maximum (doc. 1 at 8–9; doc. 10 at 19).

Petitioner additionally alleges the court failed to properly sentence him as an HFO on the second degree felonies, because the HFO sanction required a sentence above the statutory maximum, but the court imposed sentences at the 15-year statutory maximum for the second degree felonies (5 years in prison plus 1 year of community control plus 9 years of probation) (doc. 1 at 9; doc. 10 at 20–23). Petitioner contends the court's failure to properly impose the HFO sanction at sentencing on the original charges precluded the court from imposing the sanction at sentencing on the second VOP as to the second degree felonies (doc. 10 at 20–23).

Petitioner asserts he raised these issues in several grounds in his Rule 3.850 motion, including Issues One, Six, and Ten (doc. 1 at 8; doc. 10 at 17; doc. 32 at 19).

Respondent contends Petitioner failed exhaust his claims that he was misadvised at the original plea hearing as to the length of sentences the court could impose (doc. 24 at 24–25). Respondent contends those claims could have been raised on direct appeal of his original conviction and sentence, but Petitioner failed to raise them; therefore, those claims are procedurally barred (*id.*). With regard to Petitioner's claims of trial court error in imposing sentence, Respondent contends to the extent Petitioner raised them in state court, he raised them as purely state law claims (*id.* at 25–26). Respondent also contends Petitioner failed to show that the state court decisions on those claims were contrary to or an unreasonable application of clearly established federal law (*id.* at 26). Respondent further contends Petitioner failed to show he was prejudiced by the trial court's alleged sentencing errors, because his Guidelines sentences of 369.675 months were "virtually identical" to the properly-imposed HFO sentences of 30 years (360 months) on the second degree felonies (*id.* at 26).

The state court record confirms that Petitioner never argued in state court that he was misadvised as to the maximum sentences he could receive, which is a claim he could have raised on direct appeal of any of his convictions (his original conviction and his VOP convictions). The only

direct appeal Petitioner filed was a direct appeal of the second VOP, and of all the claims asserted in his initial brief, only two of them resemble the claims he makes here, namely, Issue Two and Issue Six of his initial brief (Ex. I at  9–10, 31–32).  The First DCA affirmed the VOP conviction without written opinion (Ex. J).  Petitioner raised Issue Two and Issue Six again in his Rule 3.850 motion, and he added Issue Four, which also resembles some of the claims he raises here (Ex. N at 8–9, 11, 13–14).[13]  The state circuit court adjudicated the claims as follows:

> The Defendant claims that he could not be sentenced as a HFO when he was originally not sentenced as a HFO.  Initially, the Court finds that this claim is procedurally barred as it could have been raised on direct appeal.  Furthermore, this claim is refuted by the record.  The Defendant was sentenced as a HFO in 2004 when he was originally sentenced.  Attachments 1 and 2.  The Defendant was only sentenced as a HFO in 2009 on the counts where the Defendant was originally sentenced as a HFO in 2004.  Attachments 6 and 7.  The Defendant was sentenced as a HFO in count one in all cases, and count 2 in case number 03-586.
>
> . . . .
>
> The Defendant claims that his sentences exceed the statutory maximum.  Except as to count one of case numbers 03-2963 and 03-2964, on the offenses that he was sentenced as a HFO, his sentences do not exceed the statutory maximum for a HFO.  Attachment 7; § 775.084(4)(a)2, Fla. Stat.
>
> As for the sentences where the Defendant was *not* sentenced as a HFO, the Defendant's sentences are not illegal.  Attachment 7.  Under the Criminal Punishment Code, the Defendant [sic] lowest permissible sentence was 369.675 months in state prison.  Attachment 5.  When a Defendant's lowest permissible sentence under the Criminal Punishment Code exceeds the statutory maximum, the lowest permissible sentence under the Code must be imposed.  § 921.0024(2), Fla. Stat.
>
> . . . .
>
> The Defendant asserts that the Court erred in imposing a HFO designation.  Initially, the Court finds that this claim is procedurally barred as it could have been raised on direct appeal.  Furthermore, this claim is without merit.  The Defendant stipulated to his HFO status in 2004.  Attachment 1, at 26; 28.  By agreeing to HFO status, and thus avoiding a PRR designation, the Defendant cannot argue that the Court

---

[13] Petitioner alleges Issue One of his Rule 3.850 also addressed some of the issues he raises here.  However, in Issue One, Petitioner argued the original sentences for the third degree felonies exceeded the 5-year statutory maximum (Ex. N at 7).  Petitioner does not raise that issue here.  Further, the post-conviction court recognized error with respect to Petitioner's sentence on two of the third degree felonies, Count 1 in Case No. 2003-CF-2963 and 2003-CF-2964 (*id.* at 47–48).  The court corrected the error by reducing Petitioner's sentences for those counts to the statutory maximum and directing the clerk of court to correct the judgment accordingly (*id.* at 48–49).

could not impose HFO sanctions upon the violation of probation.  <u>See</u> <u>Terry v. State</u>,
808 So. 2d 1246 (Fla. 2002).

(Ex. N at 43–45).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed
without written opinion (Exs. O, P).

On direct appeal or his Rule 3.850 motion, Petitioner could have argued that the court
misadvised him during the original plea proceeding regarding his potential sentences for the second
and third degree felonies.  Petitioner did not raise any such claim either on direct appeal or in the Rule
3.850 proceeding (*see* Exs. I, N at 7–25).  Therefore, his claim that the sentencing court misadvised
him as to his potential sentences on the second and third degree felonies is unexhausted and
procedurally barred.  Further, Petitioner failed to establish cause for his failure to exhaust.  He relies
upon <u>Martinez</u> (doc. 32 at 17–18).  However, that case provides a means for a petitioner to establish
cause for failing to raise a claim in an initial collateral review proceeding; it does not support an
argument for cause as to why Petitioner failed to raise the claim on direct appeal.  Further, Petitioner
did not present to the state court a claim of ineffective assistance of appellate counsel based upon
appellate counsel's failure to raise a claim of misadvice by the  court; instead Petitioner argued only
that appellate counsel failed to raise the conflict of interest claim asserted in Ground One *supra* (*see*
Ex. Z at 16–19).  Therefore, Petitioner is not entitled to federal review of his claim that the court
misadvised him during the original plea proceeding regarding his potential sentences for the second
and third degree felonies.

With regard to Petitioner's claim that the original sentencing court failed to properly impose
the HFO sanction on the second degree felonies (because the court failed to sentence him above the
15-year statutory maximum), which then precluded the court from imposing the HFO sanction on those
counts at sentencing on the second VOP, this claim presents purely a state law issue.  As previously
discussed, federal habeas relief is available to correct only constitutional injury.  28 U.S.C. § 2254(a);
<u>Estelle</u>, 502 U.S. at 67–68); <u>Wainwright</u>, 464 U.S. at 83–84; <u>Barclay</u>, 463 U.S. at 958–59; <u>Carrizales</u>,
699 F.2d at 1053–54.  Errors which do not infringe upon a defendant's constitutional rights provide
no basis for federal habeas corpus relief.  Questions of state law and procedure "rarely raise issues
of federal constitutional significance."  <u>Tejada</u>, 941 F.2d at 1560.  State law issues may be reviewed
in this federal forum only when the alleged errors were "so critical or important to the outcome of the

trial to render 'the entire trial fundamentally unfair.'" *Id.* (quoting Carrizales, *supra*).[14] "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process." Branan, 861 F.2d at 1508.[15]

Here, Petitioner failed to demonstrate that the court's alleged error in failing to properly impose the HFO sanction rendered his sentence fundamentally unfair. In imposing the VOP sentences on the non-HFO counts (the third degree felonies) and the life felony, the court imposed the Guidelines sentence of 369.675 months (*see* Ex. C at 470–78, 480–84). Assuming arguendo that the court could not legally impose HFO sanctions on the second degree felonies, Petitioner would have received the Guidelines sentence on those counts as well.[16] The Guidelines sentence of 369.675 months was greater than the 360 months he actually received on the second degree felonies. Therefore, he failed to show that the state court's error, if indeed there was one, rendered his sentence on the VOP fundamentally unfair.

## V.     CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

---

[14] An example of an overriding constitutional concern would be where the state interprets a statute in such a novel, unforeseeable way that it in essence deprives the accused of notice that their actions were criminal and therefore violates the Fourteenth Amendment. *See* Bouie v. City of Columbia, 378 U.S. 347, 352–53, 84 S. Ct. 1697, 12 L. Ed. 2d 894 (1964).

[15] For example, in Branan, the Eleventh Circuit reaffirmed that "in the area of state sentencing guidelines in particular, we consistently have held that federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures." *Id.* at 1508 (citing Jones v. Estelle, 622 F.2d 124, 126 (5th Cir. 1980)).

[16] The sentencing court explicitly stated during sentencing on the second VOP, "I am not finding that there is a reason for a downward departure." (Ex. C at 473).

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 9<u>th</u> day of September 2013.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**